OPINION
{¶ 1} Defendant-appellant Donald F. Collier, II, appeals multiple convictions and *Page 2 
sentences imposed by the Clark County Municipal Court for two separate counts of violating a protection order, both first degree misdemeanors, pursuant to R.C. § 2919.27(A)(1). While the two counts of violating a protection order were originally separate cases, 06-CRB-2858 and 06-CRB-2868, the two cases were tried together to the bench on July 6, 2006. The trial court found Collier guilty of both counts of violating a protection order and sentenced him to serve 180 days imprisonment in each case, the sentences to run consecutively to one another. Collier filed an untimely notice of appeal in each case on September 25, 2006. This Court granted Collier's motion for delayed appeal on November 15, 2006.
 I {¶ 2} Initially, it must be noted that both of the convictions in Case Nos. 06-CRB-2858 and 06-CRB-2868 are for violations of a protection order issued against Collier which was filed on April 6, 2006. The protection order arose out of a fourth degree misdemeanor charge of domestic violence against Collier in which Tunisia Glenn was the victim of the offense. Glenn is the mother of Collier's son, Donald "Tink" Collier, III. Both of the protection order violations allegedly occurred the same day on May 26, 2006.
CASE NO. 06-CRB-2858
 {¶ 3} On or about 5 a.m. on May 26, 2006, Tunisia Glenn heard someone beating on the entryway door to her apartment building at 1624 South Limestone Street in Springfield, Ohio. Glenn stepped out on her second-floor balcony overlooking the entryway and observed a male, whom she identified as Collier, banging on the front door and looking in her mailbox, which was positioned on the side of the doorway. Glenn immediately returned inside her apartment and called 911. *Page 3 
 {¶ 4} Springfield Police Officers Jennifer White and Neal Davis responded to the call at Glenn's apartment. Officer White testified that when she and her partner arrived, they observed no one matching Collier's description on the premises or in the general area surrounding the apartment. Officer White testified that Glenn seemed very upset and agitated when they questioned her about Collier's presence at the apartment.
 {¶ 5} During the trial, Collier testified that he was never at Glenn's apartment on the date in question. The trial court, however, believed the testimony of Glenn which placed him at the apartment in violation of the protection order. Thus, the court found him guilty and sentenced him to 180 days imprisonment.
Case No. 06-CRB-2868
 {¶ 6} At approximately 1 p.m. on May 26, 2006, Collier entered the Clark County Public Defender's Office and informed the receptionist that he was there for his scheduled meeting with his Assistant Public Defender. Since he was two hours late for the meeting, the receptionist told him that his Public Defender was not in the office and requested that he wait in the hallway just outside of the office. The receptionist observed Collier leave the office and get in an elevator as if he was not going to wait for his attorney to return.
 {¶ 7} Shortly after he left, Tunisia Glenn arrived at the office in order to inquire about the status of a traffic case in which she was involved. Collier then reappeared at the office while Glenn was speaking with a member of the Public Defender's Office staff, Debra Horne. Glenn immediately recognized Collier and informed Horne that she had a temporary restraining order against the man who just entered the office. Horne testified that Glenn appeared nervous and scared upon observing Collier. Horne led Glenn into a Public Defender's enclosed office and *Page 4 
shut the door.
 {¶ 8} During this time, Collier asked the receptionist for a pen and paper so that he could leave a note for his attorney. After Collier stepped outside the office to write the note, a receptionist stepped out into the hallway and told Collier that he needed to leave the building and call back later in order to reschedule his appointment. Upon Collier's refusal to leave the premises, Horne activated the "panic button" in the office so that security could be summoned to remove Collier. As security staff was arriving to the office, Collier finally attempted to leave the building. The record indicates that Collier spoke to a security officer before exiting the building and that he left without any further difficulty.
 {¶ 9} Based on these facts, the trial court found Collier guilty of violating the protection order because he did not "depart immediately" from the office of the Public Defender upon observing Glenn at the same location. Collier was sentenced to 180 days imprisonment, the sentence to run consecutively to the initial 180 days he received for violating the protection order by knocking on Glenn's door earlier that morning on May 26, 2006.
 II APPEAL FROM CASE NOS. 06-CRB-2858 06-CRB-2868
 A. Collier's first assignment of error is as follows:
 {¶ 10} "THE TRIAL COURT ERRED CONDUCTING A BENCH TRIAL EVEN THOUGH MR. COLLIER DID NOT WAIVE HIS RIGHT TO A JURY TRIAL IN WRITING AS REQUIRED BY R.C. § 2945.05."
 {¶ 11} In his first assignment, Collier contends that the trial court erred when it failed to require him to waive his right to a jury trial in writing pursuant to R.C. § 2945.05 before the *Page 5 
court dismissed the jury and conducted a bench trial. Although Collier concedes that he made no written demand for a jury trial in Case Nos. 06-CRB-2858 and 06-CRB-2868 pursuant to Crim. R. 23, he argues that his failure to file a written jury demand is superceded by the trial court's decision to set the matter for a jury trial in numerous court entries executed prior to trial. A review of the record indicates that neither Collier nor any counsel on his behalf filed a request for a jury trial. The trial court, however, stated that she recalled that Collier and his first attorney, a public defender, requested a jury trial in the instant case. The trial court also repeatedly stated that the matter was set for jury trial in numerous court filings and because a jury was waiting to hear the case on the day of trial, Collier asserts that the trial court erred when it failed to strictly comply with R.C. § 2945.05 and secure a written waiver.
 {¶ 12} In support of his argument, Collier relies on State v.Palo (Dec. 23, 2005), Ashtabula App. No. 2002-A-0095, 2005-Ohio-6906, which he argues stands for the proposition that "a trial court is bound by its own order stating a matter will be set for jury trial, absent a proper waiver by the defendant, even if a timely written request for a jury trial had not been made." In Palo, the trial court in a misdemeanor domestic violence case set the matter for a jury trial after the defendant made an oral motion at a pre-trial conference. The trial court then put on a judgment entry and sent out numerous notices stating that the matter was scheduled for a jury trial. Immediately prior to trial, the court put on a judgment entry stating that the case was to be set for trial to the court as no written jury demand had been filed. The matter was subsequently tried to the court, which found the defendant guilty and sentenced him accordingly. On appeal, the Eleventh District reversed the conviction holding that the trial court was bound to the jury trial since it had consistently set the matter for a jury trial even though there had *Page 6 
never been a timely written request by the defendant.
 {¶ 13} The facts of the instant case, however, are distinguishable from those in Palo. In Palo, the defendant made an oral motion during a pre-trial conference in which he specifically requested that he be given a jury trial which the trial court granted on the record. In the instant case, notwithstanding the fact that the trial court put on numerous entries that stated Collier's case was set for a jury trial, neither Collier nor his attorney made an oral request for a jury trial on the record. In fact, when the trial court informed Collier on the day of trial that a jury was waiting to hear his case, he specifically stated on the record that he did not want a jury trial and that he never requested one at any point in the proceedings. This is demonstrated by the following exchange between the trial court and Collier:
 {¶ 14} "The Court: This is the State of Ohio v. Donald Frederick Collier, II. There are two cases scheduled for trial by jury this morning. They are 06 CRB 2858 and 06 CRB 2868. Each is a single count of violating an order of protection in violation of Revised Code2919.27(A)(1). I understand there are some matters for discussion before we call the jury in. Mr. Griffin [defense counsel], there has been some talk that Mr. Collier may want to waive his right to proceed to trial by jury. Mr. Collier, what discussions have you had with your lawyer about waiving your right to proceed to jury trial?
 {¶ 15} "Collier: I never asked for a jury trial.
 {¶ 16} "The Court: Well, your previous lawyer did, Mr. Collier.
 {¶ 17} "Collier: Oh.
 {¶ 18} "The Court: Your previous lawyer filed paperwork asking that these cases be tried by jury. We had some discussion about that yesterday afternoon. I brought you into the *Page 7 
courtroom, discussed with you the offer the State had made, and indicated — you indicated that you wanted to have a trial by jury. There is a jury sitting out in the hall waiting for us to begin these proceedings. If you do not want them to decide your case, then you need to tell me that now, and you need to sign that Entry that Mr. Griffin presented to you indicating that you would rather that I decide your case as opposed to a jury. Who would you like to decide these cases today, Mr. Collier? A jury or the court?
 {¶ 19} "Collier: The Court. I never had another attorney for these two charges, so-
 {¶ 20} "The Court: You did, Mr. Collier. You had the office of the public defender and it was a staff member from that office that filed the request for a jury. If you do not want your case decided by a jury, that is most certainly a decision that you can make, but you have to tell me that in writing. Mr. Griffin has the paperwork that you need to sign. Is that what you want to do? Go forward and have your cases decided today just by the court?
 {¶ 21} "Mr. Griffin: Ma'am, um, we never had — as soon as these charges was [sic] brought they had Mr. Griffin as my attorney.
 {¶ 22} "The Court: Mr. Collier-
 {¶ 23} "Collier: I don't know.
 {¶ 24} "The Court: On July 21st, I talked with you, excuse me, on June 21st, I talked with you about Mr. Griffin came to be your attorney. We're not going to discuss what's happened before today's date. There is one question before you right now and the question is, do you want me to call the jury in and let them decide these charges today or do you want the court to decide these charges?
 {¶ 25} "Collier: I would like the court to. *Page 8 
 {¶ 26} "The Court: All right, then Mr. Griffin has the paperwork that requires your signature in order for the jury to be sent home and the case to be tried just to the court.
 {¶ 27} "Collier: I'm not signing any papers. Like I said, I never request [sic] for no jury trial.
 {¶ 28} "The Court: Mr. Collier.
 {¶ 29} "Collier: And I never had, he's the only attorney I had on this case.
 {¶ 30} "The Court: Mr. Collier, why do you insist on arguing with the court.
 {¶ 31} "Collier: Well, because you're not doing it, you're not going through the right procedures.
 {¶ 32} * * *
 {¶ 33} "The Court: Mr. Collier, there's a question before you. The question that I now want answered is if you have a law degree.
 {¶ 34} "Collier: I never had no attorney to, nobody filed for this so-
 {¶ 35} "The Court: All right. If you won't sign the paperwork, then we will call the jury in and a jury will decide your case, Mr. Collier. It's your last time.
 {¶ 36} "Mr. Sheils: May we, may we approach?
 {¶ 37} "The Court: Yes.
 {¶ 38} "Mr. Sheils: Thank you.
 {¶ 39} * * * (short unrecorded conference held between the court and counsel for the parties, after which the further following proceedings were had, to wit:)
 {¶ 40} "The Court: Mr. Collier, one last time. Yo want me to send the jury home, is that correct? *Page 9 
 {¶ 41} "Collier: Yes, ma'am.
 {¶ 42} "The Court: All right. Mr. Collier, I need to speak with them before they go home. Mr. LeVan is going to put you back in the holding cell momentarily and then we'll begin your trial. * * *"
 {¶ 43} Unlike the defendant in Palo who orally requested a jury prior to trial and was told by the court that he would have one, Collier specifically and repeatedly informed the court that he did not want a jury and that he had never asked for one. Moreover, when the court informed Collier that he had to sign a waiver of his right to jury trial pursuant to statute, he refused to sign the document, again claiming that neither he nor his attorney ever requested a jury trial with respect to the charges for violating a protection order issued against him.
 {¶ 44} The record indicates that unlike the defendant inPalo, Collier did not expect nor desire a jury trial in the instant matter. The defendant in Palo requested a jury trial, was told by the court that he would receive one, and then, immediately prior to trial, was told that his case would be tried to the bench because he did not file a motion specifically requesting a jury trial. Simply put, the defendant relied on the trial court's statements to his apparent detriment. By informing the defendant that he would have a jury trial, the court was required by law to provide him with a jury to hear his case.
 {¶ 45} In the instant case, the record reflects that Collier never properly filed a written request for a jury trial pursuant to Crim. R. 23. This alone might conclude our consideration of this matter had the court not informed Collier that he had requested a jury trial through his first attorney, a public defender. However, Collier unequivocally stated that he never requested a jury and did not want a jury. Most importantly, he refused to sign the waiver of his right to a *Page 10 
jury trial. Thus, Collier's argument that the trial court was bound by its own entries stating that a jury trial would be held is undermined in light of his own statements clearly disavowing a request for a jury trial at any juncture in these proceedings and his failure to file a written request pursuant to Crim. R. 23. Collier requested that his case be tried to the bench, and the court properly acquiesced to his decision.
 {¶ 46} Collier's first assignment of error is overruled.
B. Collier's second assignment of error is as follows:
 {¶ 47} "MR. COLLIER WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AS PROVIDED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION."
 {¶ 48} In his second assignment of error, Collier contends that he received ineffective assistance of counsel at the trial level. In support of this assertion, Collier cites the following arguments: 1) failure to make a Crim. R. 29 motion for acquittal at the close of the State's case in 06-CRB-2858 because the State presented no evidence that Collier was aware that Glenn was living at the apartment complex whose door he was seen beating on the morning of May 26, 2006; 2) failure to make a Crim. R. 29 motion for acquittal at the close of the State's case in 06-CRB-2868 because the State presented no evidence that Collier was aware that Glenn was at the Clark County Public Defender's Office when he visited the office on May 26, 2006; and 3) failure to object to testimony offered by the State concerning the contents of a note which Collier wrote to his attorney on May 26, 2006.
 {¶ 49} "When considering an allegation of ineffective assistance of counsel, a two-step *Page 11 
process is usually employed. First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness." State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373, citing State v. Lytle (1976),48 Ohio St.2d 391, 396-397, 358 N.E.2d 623, 627, vacated in part on other grounds (1978), 438 U.S. 910, 98 S.Ct. 3135.
 {¶ 50} The above standard contains essentially the same requirements as the standard set forth by the United States Supreme Court inStrickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052. "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, supra, at 687-688. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."Id. Thus, counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. Id.
 {¶ 51} For a defendant to demonstrate that he has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, absent counsel's errors, the result of the trial would have been different. Bradley, supra, at 143. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Strickland, supra, at 694. *Page 12 
 {¶ 52} The arguments Collier submitted with respect to his claim for ineffective assistance of counsel will be discussed in the sequence presented in his brief.
 {¶ 53} a. Initially, Collier argues that defense counsel provided ineffective assistance of counsel for failing to file a Crim. R. 29 motion for acquittal at the close of the State's case in 06-CRB-2858 because the State presented no evidence that Collier was aware that Glenn was living at the apartment complex whose door he was seen beating on the morning of May 26, 2006.
 {¶ 54} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id., citingJackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781.
 {¶ 55} Criminal Rule 29 provides that "the court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses."
 {¶ 56} The court convicted Collier of violating a protection order in violation of R.C. § 2919.27(A)(1), which provides that no person shall recklessly violate the terms of a protection order issued under R.C. § 3113.31, which governs domestic violence protection orders. Under R.C. § 2901.22(C), "a person acts recklessly when, with heedless indifference to the *Page 13 
consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature."
 {¶ 57} Glenn testified that at approximately 5 a.m. on May 26, 2006, she observed Collier beating on the downstairs front door to her apartment complex. She also testified that she observed Collier looking through mail that had been left in the mailbox next to the front door. From these facts, it is perfectly reasonable for a trier of fact to infer that Collier was aware that Glenn lived in the apartment complex. Thus, Collier's counsel was not ineffective for failing to make a Crim. R. 29 motion for acquittal at the close of the State's evidence in 06-CRB-2858.
 {¶ 58} b. Collier next argues that defense counsel provided ineffective assistance of counsel for failing to make a Crim. R. 29 motion for acquittal at the close of the State's case in 06-CRB-2868 because the State presented no evidence that Collier was aware that Glenn was at the Clark County Public Defender's Office when he visited the office on May 26, 2006.
 {¶ 59} The testimony offered during trial demonstrated that while Collier may not have known that Glenn would be at the Clark County Public Defender's Office when he first arrived, he became aware of her presence after he walked into the office while Glenn was talking to one of the receptionists about her traffic case. It is also possible that since the receptionist observed Collier take the elevator, an inference can be drawn that he saw Glenn as she was entering the building and followed her back to the public defender's office.
 {¶ 60} Glenn testified that she observed Collier as he walked into the office and she became nervous and a receptionist ushered her into another office. It is perfectly reasonable for a trier of fact to infer from the testimony of Glenn as well as that of the staff in the public *Page 14 
defender's office that if Glenn was able to observe Collier in the front of the office, then Collier was able to discern Glenn in the office. Once Collier became aware of Glenn's presence, he refused to depart immediately under the terms of the protection order. Thus, Collier's attorney's failure to make a Crim. R. 29 motion for acquittal at the close of the State's case does not amount to ineffective assistance.
 {¶ 61} c. Lastly, Collier argues that his defense counsel provided ineffective assistance of counsel for failing to object to the introduction of the contents of a note that Collier had written to his public defender. Collier correctly asserts that the contents of the note were protected by attorney-client privilege.
 {¶ 62} More importantly, defense counsel's failure to object to the introduction of the contents of the note did constitute ineffective assistance of counsel. However, the witness who testified regarding the contents of the note stated that the only protected information written on the note from Collier to his attorney was the letter "T."
 {¶ 63} To establish a claim of ineffective assistance of counsel, Collier must demonstrate that his counsel's performance fell below an objective standard of reasonable representation. Bradley,42 Ohio St.3d 136, supra. Further, he must also show that he was prejudiced by counsel's performance. Id. In order to demonstrate prejudice, Collier must present evidence that counsel's deficient performance made the "trial unreliable or the proceeding fundamentally unfair." Lockhart v.Fretwell (1993), 506 U.S. 364, 372, 113 S.Ct. 838. While counsel's failure to object to testimony regarding the contents of the note amounted to ineffective assistance of counsel, Collier is unable to demonstrate that he was prejudiced by the inclusion of said evidence or that the result of the trial would have been different had his *Page 15 
attorney objected.
 {¶ 64} Collier's second assignment of error is overruled.
C. Collier's third assignment of error is as follows:
 {¶ 65} "THE TRIAL JUDGE ERRED WHEN SHE OVERRULED MR. COLLIER'S RULE 29 MOTION FOR ACQUITTAL AS TO 06CRB02858 AND 06CRB02868."
 {¶ 66} a. In the first section of his third assignment, Collier contends that the trial court erred when it denied his Crim. R. 29 motion for acquittal at the close of evidence with respect to 06-CRB-2858. Collier argues that there was insufficient evidence to demonstrate that he knew that Glenn was living at the apartment building at 1624 South Limestone Street in Springfield, Ohio. Therefore, the trial court erred when it found Collier guilty of recklessly violating the protection order against him.
 {¶ 67} As we previously stated, Glenn testified that at approximately 5 a.m. on May 26, 2006, she observed Collier beating on the downstairs front door to her apartment complex. She also testified that she observed Collier looking through mail that had been left in the mailbox next to the front door. From these facts, it is perfectly reasonable for a trier of fact to infer that Collier was aware that Glenn lived in the apartment complex. Thus, sufficient evidence was adduced at trial by which a trier of fact could find that Collier recklessly violated the terms of if the protection order against him.
 {¶ 68} b. In the second section of Collier's assignment, he contends that the trial court erred when it denied his Crim. R. 29 motion for acquittal at the close of evidence in 06-CRB-2868. Collier argues that there was insufficient evidence to demonstrate that he recklessly violated the terms of the protection order when he did not "depart immediately" from the public *Page 16 
defender's office once he became aware that Glenn was also at the office. Collier provided the following testimony on cross-examination from the State:
 {¶ 69} "The State: Well, you knew a judge had already told you that if you come in contact her [sic], with her, even by accident, you are to immediately leave? Right?
 {¶ 70} "Collier: Well, in court, in the public defender's office, I thought was different circumstances.
 {¶ 71} "The State: Oh.
 {¶ 72} "Collier: Since I had an appointment to be that day.
 {¶ 73} "The State: That day, but-
 {¶ 74} "Collier: Yeah.
 {¶ 75} "The State: But certainly not that time, right? Right.
 {¶ 76} "Collier: I'd been waiting for 45 minutes for the public defender. So they had, they knew I was there waiting.
 {¶ 77} "The State: They knew that you were there waiting?
 {¶ 78} "Collier: Yes, sir.
 {¶ 79} "The State: Perhaps, but Miss Glenn wasn't there at that time, was she?
 {¶ 80} "Collier: No, sir.
 {¶ 81} "The State: All right. So as soon as Miss Glenn comes in, you knew that you were supposed to vacate immediately, correct?
 {¶ 82} "Collier: I never, I never seen [sic] Miss Glenn come in.
 {¶ 83} "The State: Well, you went into the office and you saw her inthere, didn't you?
 {¶ 84} "Collier: Yes" *Page 17 
 {¶ 85} At this point, Collier was under a duty imposed on him by the protection order to leave immediately. Instead, Collier asked for a pen and paper from another secretary in the office and went outside in the hallway ostensibly to compose a message for his public defender. Eventually, the staff in the public defender's office resorted to calling security to remove Collier from the building. Collier's actions in this regard clearly demonstrate perverse indifference to the consequences of his actions. Thus, it is clear from the record that sufficient evidence existed to sustain a guilty verdict against Collier for recklessly violating the protection order.
 {¶ 86} Collier's third assignment of error is overruled.
D. Because our analysis of Collier's fifth assignment of error renders moot any discussion of his fourth assignment, the fifth assignment will be addressed first:
 {¶ 87} "THE TRIAL COURT ERRED WHEN SHE FAILED TO COMPLY WITH CRIMINAL RULE 32(A)(1) BEFORE IMPOSING SENTENCE ON MR. COLLIER."
 {¶ 88} In his fifth assignment, Collier argues that the trial court erred when it failed to afford him the right to speak in his own behalf prior to sentencing him. Crim. R. 32(A)(1) provides in pertinent part:
 {¶ 89} "(A) Imposition of sentence
 {¶ 90} "* * * At the time of imposing sentence, the court shall do all of the following:
 {¶ 91} "(1) Afford counsel an opportunity to speak on behalf of the defendant and address the defendant personally and ask if he or she wishes to speak to make a statement in his ir her own behalf or present any information in mitigation of punishment."
 {¶ 92} The plain language of Crim. R 32(A)(1) imposes a mandatory duty upon the trial *Page 18 
court to unambiguously address the defendant and provide him or her with the opportunity to speak before sentencing. State v. Green (2000),90 Ohio St.3d 352, 359, 738 N.E.2d 1208. The defendant's right to allocution applies equally to both felony and misdemeanor convictions.Defiance v. Cannon (1990), 70 Ohio App.3d 821, 828, 592 N.E.2d 884. "A Crim. R. 32 inquiry is much more than an empty ritual; it represent's a defendant's last opportunity to plead his case or express remorse."Green v. United States (1961), 365 U.S. 301, 359-360, 81 S.Ct. 653. The right to allocution is both absolute and not subject to waiver due to the defendant's failure to object. State v. Campbell (2000),90 Ohio St.3d 320, 325-326, 738 N.E.2d 1178, 2000-Ohio-183. When a trial court imposes sentence without first asking the defendant whether he or she has anything to say in his or her defense, the judgment of sentence shall be reversed and the cause shall be remanded for resentencing, unless the error is invited or harmless. Id.
 {¶ 93} A review of the record clearly indicates that the trial court failed to follow the mandate of Crim. R. 32(A)(1) when it did not ask Collier if he had anything to say in his own behalf before imposing sentence. Thus, Collier's sentence is vacated and this matter is remanded for resentencing.
 {¶ 94} Collier's fifth assignment of error is sustained.
E. Collier's fourth assignment of error is as follows:
 {¶ 95} "THE TRIAL COURT ERRED WHEN IT SENTENCED MR. COLLIER TO MAXIMUM CONSECUTIVE JAIL TERMS."
 {¶ 96} In his fourth assignment of error, Collier contends that trial court erred when it sentenced him to maximum consecutive jail terms upon findings of guilt in Case Nos. 06-CRB-2858 and 06-CRB-2868. Specifically, Collier argues that pursuant to the Ohio Supreme Court's *Page 19 
decision in State v. Foster (2006), 109 Ohio St.3d 1, 845 N.E.2d 470,2006-Ohio 856, R.C. § 2929.22(C) is unconstitutional. In the alternative, Collier asserts that if we find R.C. § 2929.22(C) to be constitutional pursuant to Foster, then the trial court erred in sentencing Collier to maximum/consecutive jail terms because the trial court failed to properly apply R.C. § 2929.22(C).
 {¶ 97} In light of our disposition with respect to Collier's fifth assignment, his fourth assignment of error is rendered moot and will not be discussed any further. F. Collier's sixth and final assignment of error is as follows:
 {¶ 98} "THE TRIAL JUDGE ERRED WHEN SHE DENIED MR. COLLIER THE OPPORTUNITY TO CROSS-EXAMINE THE COMPLAINING WITNESS AND FROM INTRODUCING EVIDENCE FAVORABLE TO HIM"
 {¶ 99} In his sixth assignment, Collier contends that the trial court erred when it denied him the right to more extensively cross-examine Glenn with respect to her claim that she was fearful of him. Additionally, Collier argues that the trial court erred when it denied him the right to call as a witness a police officer who investigated an alleged incident wherein Glenn physically assaulted Collier. Essentially, Collier asserts that he was wrongly denied the right to test the credibility of Glenn, the complaining witness in the instant matter.
 {¶ 100} The following exchange undermines Collier's assertion in this regard:
 {¶ 101} "Sheils [State prosecutor]: * * * It's my understanding that Officer Noel Collins from the Springfield Police Division is the first potential witness to be called by the defense, and we just want to discuss that, as to whether or not that — since it's my understanding that he's going to testify about his contact with Miss Glenn from a matter that you've already *Page 20 
prohibited from going into that area, in 2005.
 {¶ 102} "The Court: Is that an alleged assault in May of 2005?
 {¶ 103} "Griffin [defense counsel]: Yes, Your Honor. He was the arresting officer and investigating officer in that incident, and we would intend to call him both to rebut what Miss Glenn said and to, as a factor toward her character.
 {¶ 104} "The Court: Mr. Sheils?
 {¶ 105} "Sheils: Well, I guess that what I'm asking for is a motion in limine to prevent testifying because of, first of all, I don't see how it's relevant as to whether or not the court orders, the court order that was imposed upon Mr. Collier not to come within 500 feet of Miss Glenn, how being involved in another court case a year earlier, what that has to do with it. I just, I find it absolutely irrelevant. And if what he, what — if defense counsel is trying to show some sort of prior bad act on the part of the witness, on the part of Miss Glenn, I think as the court appropriately ruled earlier, that's not admissible at this point.
 {¶ 106} "The Court: Mr. Griffin, would you first address the issue of relevancy of the testimony of Officer Collins.
 {¶ 107} * * *
 {¶ 108} "The Court: The issue of relevancy. How is what you intend to elicit from Officer Collins have [sic] any tendency to make the existence of any fact that is consequence [sic] to the determination of this action more probable or less probable than it would be without the evidence?
 {¶ 109} "Griffin: Your Honor, the prosecutor has numerous times through numerous witnesses asked about Mrs, I'm sorry, Miss Glenn's reaction and fear of Donald *Page 21 
[Collier], and I think that the evidence from this Officer Collins would show that she is not afraid of him and in fact, herself has been an aggressor toward him.
 {¶ 110} "The Court: What element of the offense of violating an order of protection does it pertain to, Mr. Griffin?
 {¶ 111} "Griffin: It would not directly pertain to that YouHonor. It would go to her credibility.
 {¶ 112} "Sheils: If I may, Your Honor. Any value really that the, in showing that she, Miss Glenn's reaction was to show surprise and that she was surprised that he was present, not that she necessarily was very fearful of him. Fear is not an element in the offense of violating anorder of protection.
 {¶ 113} "The Court: Mr. Griffin, I'm looking at Evidence Rule 608(B) which I believe to be the applicable rule here, specific incidences of conduct. Can you assist the court in determining how that rule would allow this testimony?
 {¶ 114} "Griffin: In the description of the court, Your Honor, if they're probative of truthfulness or untruthfulness may be inquired into on cross-examination. And since she denied that that happened, I think we're allowed to show then extrinsic evidence that it did happen.
 {¶ 115} "The Court: I think the rule says it may not be proved by extrinsic evidence. If I'm understanding correctly, 609 has no applicability here because there was no conviction, is that correct?
 {¶ 116} "Griffin: There was a conviction of lesser offense, not dealing-
 {¶ 117} "The Court: Punishable by death or imprisonment in excess of one year? *Page 22 
 {¶ 118} "Griffin: No.
 {¶ 119} "The Court: Okay. Then I will rule that Officer Collins' testimony will not be allowed. * * *"
 {¶ 120} Admissibility of evidence pertinent to credibility of a witness' testimony is a matter within the discretion of the trial court.State v. Ramos (March 9, 1987), Montgomery App. No. CA 9865. "The trial court has broad discretion in the admission and exclusion of evidence and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, this court should be slow to interfere." State v. Hymore (1967), 9 Ohio St.2d 122, 128,224 N.E.2d 126. An "abuse of discretion" means more than an error of law or judgment, it requires that the court's attitude is unreasonable, arbitrary, or unconscionable. State v. Adams (1980), 62 Ohio St.2d 151,157, 404 N.E.2d 144, citing Steiner v. Custer (1940), 137 Ohio St. 448,31 N.E.2d 855.
 {¶ 121} After a thorough review of the record, we agree with the ruling made by the trial court and find that the extrinsic evidence of the alleged assault of Collier by Glenn was inadmissible at trial. Moreover, whether Glenn was in fear of Collier is irrelevant in determining if Collier was guilty of violating a protection order. Lastly, the court properly held that the extrinsic evidence did not meet the necessary criteria pursuant to Evid. R. 608(B) and 609(A) for admission at trial. Thus, the trial court did not abuse its discretion when it denied Collier the opportunity to attack the credibility of Glenn with inadmissible extrinsic evidence.
 {¶ 122} Collier's sixth and final assignment of error is overruled.
 III {¶ 123} Collier's fifth assignment of error having been sustained, the sentence *Page 23 
imposed by the trial court is reversed, and this matter is remanded for resentencing in accordance with law and consistent with this opinion. In all other respects, the judgment of trial court is affirmed.
 BROGAN, J. and GRADY, J., concur. *Page 1