**[Cite as *State v. Terrell*, 2022-Ohio-3165.]**

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

STATE OF OHIO                                :
                                            :
    Plaintiff-Appellee              :    Appellate Case No. 29408
                                            :
v.                                          :    Trial Court Case No. CRB2102107
                                            :
TIFFANIE TERRELL                            :    (Criminal Appeal from Municipal Court)
                                            :
    Defendant-Appellant            :
                                            :

. . . . . . . . . . .

## O P I N I O N

Rendered on the 9th day of September, 2022.

. . . . . . . . . . .

ERIK R. BLAINE, Atty. Reg. No. 0080726, Assistant Prosecuting Attorney, City of Vandalia Prosecutor's Office, 245 James E. Bohanan Memorial Drive, Vandalia, Ohio 45377
    Attorney for Plaintiff-Appellee

TRAVIS L. KANE, Atty. Reg. No. 0088191, 130 West Second Street, Suite 460, Dayton, Ohio 45402
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-appellant, Tiffanie Terrell, appeals from her conviction for menacing following a bench trial in the Vandalia Municipal Court. In support of her appeal, Terrell contends that her conviction was against the manifest weight of the evidence. Terrell also contends that the trial court erred by failing to afford her the right of allocution at her sentencing hearing as required by Crim.R. 32(A)(1). The State concedes error in that regard, and we agree that the trial court erred by denying Terrell her right of allocution. We do not, however, find that Terrell's conviction was against the manifest weight of the evidence. Therefore, the trial court's judgment will be reversed in part, and the matter will be remanded to the trial court for a resentencing hearing. In all other respects, the judgment of the trial court will be affirmed.

**Facts and Course of Proceedings**

{¶ 2} On October 26, 2021, Terrell was charged by complaint with one count of menacing in violation of Vandalia City Ordinance 636.06(A), a misdemeanor of the fourth degree. The charge arose from allegations that Terrell had engaged in a high-speed vehicle chase with Laquitta Jones and followed Jones to the Flying J gas station in Vandalia, Ohio, where Terrell made contact with Jones and threatened to kill her. Terrell pled not guilty to the charge and the matter proceeded to a bench trial. During trial, the State presented testimony from Jones and the Vandalia police officer who investigated the incident. Terrell also testified in her defense. The following is a summary of the testimony presented at trial.

{¶ 3} Jones testified that on October 26, 2021, she was driving to work when an unknown vehicle got behind her and randomly started to chase her on the highway. Jones testified that the driver of the vehicle chasing her was trying to make her wreck and that the chase reached a speed of 120 miles per hour. Jones testified that she almost lost control of her vehicle during the chase and feared for her life. In the midst of the chase, Jones decided to drive to the Flying J gas station off of Exit 64 in Vandalia because she thought it was the safest place to go.

{¶ 4} Jones testified that when she parked her car at the Flying J, she saw the vehicle that had been chasing her. Jones testified that she exited her car, put her hands up, and said "what's going on, what's up" to the driver of the vehicle. Trial Tr. p. 7. As she was doing this, Jones testified that the driver pulled the vehicle up beside her and blocked her in the parking space. Jones testified that the driver then rolled down the vehicle's window and started yelling threats at her from inside the vehicle. Specifically, Jones testified that the driver accused Jones of sleeping with her boyfriend and threatened to kill her.

{¶ 5} Jones testified that when the driver rolled down the vehicle's window and started threatening her, she realized that the driver was Terrell. Although Jones testified that she had never met Terrell in person before that incident, Jones explained that she was familiar with Terrell because she had recently formed a "friendship" with Terrell's boyfriend, Quentin Johnson. *Id.* at 8, 13-14. Jones testified that Terrell had previously harassed her over her friendship with Johnson and had busted the windows out of her car. Jones testified that based on Terrell's prior incidents of harassment, Jones was

scared that Terrell was going to cause her physical harm, and she believed Terrell was capable of carrying out the threat to kill her.

{¶ 6} Jones testified that she called and reported the incident to the police when she arrived at work 30 minutes after the incident. Sergeant Todd Flynn of the Vandalia Police Department testified that he responded to Jones's call and made contact with Jones at her workplace. Sgt. Flynn testified that when he met with Jones, Jones was in distress over the incident with Terrell and was visibly shaken. According to Sgt. Flynn, Jones was worried that Terrell would show up at her workplace. Sgt. Flynn testified that Jones had told him that she and Terrell knew each other because they had a gentleman in common. Sgt. Flynn, however, testified that Jones did not share any further details on that matter.

{¶ 7} Continuing, Sgt. Flynn testified that Jones provided him with registration information associated with Terrell's vehicle. After running the registration information, Sgt. Flynn learned that the registered owner of the vehicle was an individual named Thomas Terrell. Sgt. Flynn testified that he attempted to contact the registered owner and Terrell, but was unsuccessful in doing so. Sgt. Flynn testified that Terrell never returned his call and that he never met with Terrell.

{¶ 8} While testifying in her defense, Terrell admitted to following Jones's vehicle on the day in question and to traveling over the speed limit while doing so. Terrell also admitted to following Jones to the Flying J parking lot and to parking behind Jones's vehicle. Terrell testified that she followed Jones's vehicle because her feelings were hurt over Jones's sleeping with her boyfriend. Terrell also testified that she wanted to see

Jones's face and have some words with her.

{¶ 9} Terrell testified that after she parked behind Jones, Jones got out of her vehicle with her hands up and approached her vehicle saying: "[D]o we have a problem[?]" Trial Tr. p. 37.   Terrell testified that she rolled down the passenger window to her vehicle and responded: "[Y]es, we do."   *Id.*   To that, Terrell testified that Jones asked: "[W]ho are you[?]"   *Id.*   In response, Terrell claimed that she said the following to Jones:

> [Y]ou're screwing that many men that you don't' know who I am[?]   *
> * * [T]hat's a shame, that's what happens when you sleep with strangers. *
> * * I'm gonna tell you like this, I don't know who your husband is but I know
> you're married and when I find out who he is I promise you he'll never come
> back.

*Id.*

{¶ 10} Terrell testified that after she made those comments, Jones told her to "get out of the car" and then reached for something that might have been a gun.   *Id.*   Terrell testified that she thought Jones was reaching for a gun because she was aware that Jones had a gun license.   At that point, Terrell testified that she told Jones: "I don't fight, I'm too pretty to fight."   *Id.* at 42.   Terrell claimed that, after making that statement, she drove away.   According to Terrell, that was the end of the incident.   Terrell denied ever telling Jones that she was going to kill her.

{¶ 11} After taking the matter under advisement, the trial court issued a decision on December 30, 2021, finding Terrell guilty of menacing.   The trial court then sentenced Terrell to 30 days in jail with 27 days suspended on the condition that she commit no

criminal offenses for one year and attend an anger management program. The trial court also sentenced Terrell to one year of probation and ordered Terrell to pay a $150 fine and court costs and to have no contact with Jones. During the sentencing hearing, the trial court did not personally address Terrell or offer Terrell the opportunity to make a statement in mitigation of punishment.

{¶ 12} Terrell now appeals from her conviction, raising two assignments of error for review.

**First Assignment of Error**

{¶ 13} Under her first assignment of error, Terrell contends that her conviction for menacing was against the manifest weight of the evidence. We disagree.

{¶ 14} "A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." (Citation omitted.) *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 12. When evaluating whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). A judgment of conviction should be reversed as being against the manifest weight of the

evidence only in exceptional circumstances. *Martin* at 175.

{¶ 15} "The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence." *State v. Adams*, 2d Dist. Greene Nos. 2013-CA-61, 2013-CA-62, 2014-Ohio-3432, ¶ 24, citing *Wilson* at ¶14. "The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). Therefore, this court will not substitute its judgment for that of the trier of fact on the issue of witness credibility "unless it is patently apparent that the trier of fac[t] lost its way in arriving at its verdict." (Citation omitted.) *Wilson* at ¶ 17.

{¶ 16} In challenging the weight of the evidence, Terrell claims that Jones's testimony was inconsistent because Jones testified that she was chased by Terrell but did not explain how the chase started or how she knew she was being chased. Terrell also argues that Jones testified that she did not know it was Terrell who was chasing her, but then later testified on cross-examination that it was not the first time that Terrell had chased her. Terrell also takes issue with the fact that Jones waited 30 minutes after the incident to call the police and that Jones never filed a protection order against her. According to Terrell, the trial court should have relied on her testimony that she did not threaten to kill Jones.

{¶ 17} After reviewing the record, we find that the alleged inconsistencies and issues that Terrell raises in regard to Jones's testimony were either trivial matters or were explained by Jones while testifying. Regardless, this court must give substantial

deference to the trial court's resolution of any conflicting testimony and to the trial court's determination as to witness credibility. *Lawson* at *4. In other words, it was within the province of the trial court to determine whether Jones's testimony was credible. We note that " '[a] verdict is not against the manifest weight of the evidence [simply] because the finder of fact chose to believe the State's witnesses rather than the defendant's version of the events.' " *State v. McCary*, 2d Dist. Montgomery No. 28250, 2019-Ohio-4596, ¶ 33, quoting *State v. Oswald*, 9th Dist. Summit No. 28633, 2018-Ohio-245, ¶ 25. (Other citations omitted.)

{¶ 18} In this case, the only relevant facts in controversy were whether Terrell threatened to kill Jones during the incident in question and whether Jones believed that Terrell would cause her physical harm. The trial court's decision finding Terrell guilty of menacing establishes that the court found Jones credible and relied on Jones's version of events, i.e., that Terrell did threaten to kill Jones and that Jones believed that Terrell would cause her physical harm. Upon review, we find that the trial court's credibility determination was sound and that it did not create a manifest miscarriage of justice that warranted a reversal of Terrell's conviction. We also do not find that the evidence weighed heavily against finding Terrell guilty of menacing. Therefore, Terrell's menacing conviction was not against the manifest weight of the evidence.

{¶ 19} Terrell's first assignment of error is overruled.

**Second Assignment of Error**

{¶ 20} Under her second assignment of error, Terrell contends that the trial court

erred by failing to afford her the right of allocution because it did not give her an opportunity to make a statement or to present information in mitigation of punishment at her sentencing hearing. As noted above, the State concedes error in that regard. After reviewing the record, we agree that the trial court erred by denying Terrell her right of allocution.

{¶ 21} A defendant's right of allocution is governed by Crim.R. 32(A)(1), which provides that, "[a]t the time of imposing sentence," the trial court is obligated to "[a]fford counsel an opportunity to speak on behalf of the defendant and address the defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment." The right of allocution applies to both felony and misdemeanor convictions. *State v. Cantrell*, 2d Dist. Champaign No. 2014-CA-19, 2015-Ohio-1936, ¶ 4, citing *State v. Collier*, 2d Dist. Clark Nos. 2006-CA-102, 2006-CA-104, 2007-Ohio-6349, ¶ 92.

{¶ 22} "Crim.R. 32(A)(1) clearly specifies that the court must extend an opportunity to both the attorney and the defendant to make a statement." *State v. Sexton*, 2d Dist. Greene No. 2004-CA-14, 2005-Ohio-449, ¶ 33. "The onus is therefore on the trial court to inquire of the defendant or his counsel as to whether they have anything to say which may affect the outcome of the sentencing." *State v. Faircloth*, 2d Dist. Montgomery No. 28715, 2021-Ohio-1514, ¶ 12. "While the defendant may waive the right of allocution, Crim.R. 32(A)(1) imposes an affirmative duty on the court to speak directly to the defendant on the record and inquire whether he or she wishes to exercise that right or waive it." *Sexton* at ¶ 31, citing *State v. Campbell*, 90 Ohio St.3d 320, 738 N.E.2d 1178

(2000). " 'Where the record shows that the court did not afford the right of allocution, and where this is the only error in the record, the finding of guilt is not reversed, but instead the cause is remanded to the trial court for the sole purpose of resentencing.' " *Cantrell* at ¶ 4, quoting *State v. Conkle*, 2d Dist. Montgomery Nos. 24161, 24163, 2012-Ohio-1772, ¶ 41. "[R]esentencing is required unless the error is invited error or harmless error." *Campbell* at paragraph three of the syllabus.

{¶ 23} "The doctrine of invited error holds that a litigant may not 'take advantage of an error which he himself invited or induced.' " *Id.* at 324, quoting *Hal Artz Lincoln-Mercury, Inc. v. Ford Motor Co.*, 28 Ohio St.3d 20, 502 N.E.2d 590 (1986), paragraph one of the syllabus. (Other citations omitted.) The doctrine of harmless error for criminal cases provides that: "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Crim.R. 52(A). Therefore, for harmless error, it must be determined "whether the rights affected are 'substantial' and, if so, whether a defendant has suffered any prejudice as a result." *State v. Harris*, 142 Ohio St.3d 211, 2015-Ohio-166, 28 N.E.3d 1256, ¶ 36, quoting *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, ¶ 24.

{¶ 24} The Supreme Court of Ohio has explained that "a trial court's failure to address the defendant at sentencing is not prejudicial in every case." *Campbell* at 325. For example, in *State v. Reynolds*, 80 Ohio St.3d 670, 687 N.E.2d 1358 (1998), the Supreme Court found an allocution omission to be harmless error in a capital case where defense counsel made a statement to the judge on the defendant's behalf and the defendant made an unsworn statement to the jury in the penalty phase and sent a letter

to the judge. *Campbell* at 325, citing *Reynolds* at 684.

**{¶ 25}** In the present case, the record establishes that the trial court did not afford Terrell the right of allocution during her sentencing hearing. Although the trial court permitted Terrell's trial counsel to make a statement on Terrell's behalf before the sentence was imposed, the trial court did not address Terrell personally and did not ask Terrell whether she wanted to make a statement on her own behalf or present any information in mitigation of punishment as required by Crim.R. 32(A)(1). Nothing in the record indicates that Terrell invited this error. The record also indicates that the error was not harmless, as Terrell did not make any form of sworn or unsworn statement to the judge like the defendant did in *Reynolds*. Therefore, because the trial court's failure to afford Terrell the right of allocution was not invited error or harmless error, resentencing is required.

**{¶ 26}** Terrell's second assignment of error is sustained.

## Conclusion

**{¶ 27}** Having sustained Terrell's second assignment of error, the judgment of the trial court is reversed in part, and the matter is remanded to the trial court for a resentencing hearing that complies with Crim.R. 32(A)(1). The judgment of the trial court is affirmed in all other respects.

. . . . . . . . . . . . .

EPLEY, J. and LEWIS, J., concur.

Copies sent to:

Erik R. Blaine
Travis L. Kane
Hon. Cynthia M. Heck