[Cite as *State v. Harris*, 2013-Ohio-716.]

## IN THE COURT OF APPEALS OF OHIO
### SECOND APPELLATE DISTRICT
### MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 23915 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 09-TRD-2684 |
| v. | : | |
| | : | |
| LISA J. HARRIS | : | (Criminal Appeal from |
| | : | Dayton Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 1st day of March, 2013.

. . . . . . . . . . .

JOHN DANISH, Atty. Reg. #0046639, and STEPHANIE COOK, Atty. Reg. #0067101, by SHAUNA HILL, Atty. Reg. #0074569, City Prosecutor's Office, 335 West Third Street, Room 372, Dayton, Ohio 45402
        Attorney for Plaintiff-Appellee

CHERYL L. COLLINS, Atty. Reg. #0085671, Post Office Box 10504, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

FAIN, P.J.

{¶ 1}    Defendant-appellant Lisa J. Harris appeals from her conviction and sentence for Leaving the Scene of an Accident Involving Injury,  in violation of R.C. 4549.021.

Harris contends: that she was denied her right to a meaningful appeal due to the trial court's failure to record significant portions of the trial; that she was denied her right to allocution; that she was denied her rights to due process and a fair trial when the trial court failed to remove a sleeping juror; that her conviction is against the manifest weight of the evidence; and that the trial court erred in admitting irrelevant and unduly prejudicial evidence.

{¶ 2} We conclude that the trial court erred in denying Harris her right to allocution. We further conclude that Harris has failed to demonstrate reversible error in her remaining assignments of error; they are therefore overruled. Accordingly, the sentence is Reversed; judgment of the trial court is Affirmed in all other respects; and this cause is Remanded for re-sentencing.

## I.  Harris Hits a High School Student with her Car

{¶ 3} In September 2008, Lisa Harris was driving to work, heading eastbound on Wayne Avenue. At the same time, a Belmont High School student was walking to school in the same direction. Due to a recent windstorm, the sidewalk on which the student was walking was covered with fallen tree limbs. The student stepped into the roadway as Harris was driving by, and was struck by Harris's vehicle. The student died as a result of the injuries from the accident.

{¶ 4} Although Harris was aware that she had hit something, she continued on to work without stopping. When Harris arrived at work, she noticed that her vehicle had been dented and that her side mirror had been damaged. Harris's boyfriend taped the side mirror back into place.

{¶ 5} Later that morning, Harris began hearing news reports regarding a fatal hit-and-run accident that had occurred on Wayne Avenue earlier that morning. In the evening, Harris again heard news reports about the fatal accident. The next morning, Harris contacted the police department about the possibility that she was the driver of the vehicle that hit the high school student.

{¶ 6} Harris was questioned at the police department. She admitted that she had hit something with her vehicle, but she denied knowing that she had hit a person. Her vehicle was inspected, and the damage was consistent with witnesses' reports of the accident. A spot of blood found on the truck matched the high school student's blood.

## II. The Course of Proceedings

{¶ 7} Harris was charged with Leaving the Scene of An Accident Involving Injury, in violation of R.C. 4549.021. A jury found Harris guilty. Harris was sentenced to 180 days in jail, of which 120 days were suspended. Harris also received supervised probation for two years, a fine of $200, and a three-year driver's license suspension, and was ordered to pay court costs and jury costs. From her conviction and sentence, Harris appeals.

{¶ 8} During the pendency of this appeal, Harris filed a motion in the trial court to Complete the Record for Appeal, and requested a hearing on her motion. In support of her motion, Harris attached a stipulation of the parties that the transcript of the trial did not contain a complete record of what had transpired during the trial. The parties attempted to complete the record by stipulation, pursuant to App.R. 9(E), but the parties were unable to agree as to the substance of the missing information. Thereafter, the trial court issued a decision and entry completing the record. The trial judge who signed this entry was the

original trial judge's successor, the judge who had presided at the trial being deceased.

### III. Harris Was Not Denied her Right to a Meaningful Appeal

{¶ 9} Harris's First Assignment of Error states:

APPELLANT WAS DENIED HER RIGHT TO A MEANINGFUL APPEAL WHEN THE TRIAL COURT FAILED TO RECORD SIGNIFICANT PORTIONS OF THE TRIAL.

{¶ 10} "The trial court shall ensure that all proceedings of record are recorded by a reliable method, which may include a stenographic/shorthand reporter, audio-recording device, and/or video-recording device." App.R. 9(A)(2). "If no recording was made, or when a recording was made but is no longer available for transcription, App. R. 9(C) or 9(D) may be utilized." App.R. 9(B)(4).

{¶ 11} App.R. 9(C) through (E) set forth the process to be followed to complete the record when a party believes the record of proceedings is incomplete or inaccurate. The Rule provides, in part:

(C) **Statement of the evidence or proceedings when no recording was made, when the transcript of proceedings is unavailable, or when a recording was made but is no longer available for transcription.** If no recording of the proceedings was made, if a transcript is unavailable, or if a recording was made but is no longer available for transcription, the appellant may prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection. The statement shall be served on the appellee * * * and the appellee may serve on the appellant objections or

propose amendments to the statement * * * . The statement and any objections or proposed amendments shall be forthwith submitted to the trial court for settlement and approval. The trial court shall act prior to the time for transmission of the record pursuant to App. R. 10, and, as settled and approved, the statement shall be included by the clerk of the trial court in the record on appeal.

(D) **Agreed statement as the record on appeal.** In lieu of the record on appeal as defined in division (A) of this rule, the parties * * * may prepare and sign a statement of the case showing how the issues raised in the appeal arose and were decided in the trial court and setting forth only so many of the facts averred and proved or sought to be proved as are essential to a decision of the issues presented. If the statement conforms to the truth, it, together with additions as the trial court may consider necessary to present fully the issues raised in the appeal, shall be approved by the trial court * * * and shall then be certified to the court of appeals * * * .

(E) **Correction or modification of the record.** If any difference arises as to whether the record truly discloses what occurred in the trial court, the difference shall be submitted to and settled by the trial court and the record made to conform to the truth. * * * (Emphasis sic.)

{¶ 12} Pursuant to App.R. 9, Harris filed a motion in the trial court to complete the record on appeal. Harris attached an affidavit of her trial counsel to her motion. The affidavit stated, in part:

I, Shawn P. Hooks, after first being duly sworn according to law, deposes and states the following:

* * *

3.  In reviewing the transcript of the trial and proceedings there were certain objections and motions that do not appear as part of the complete record.

4.  Before the trial a motion in limine was granted barring the State from discussing the seriousness of the injuries and the fact that the victim died as a result of the accident.

5.  I specifically asked whether or not all the sidebars would be recorded for the record prior to trial and was told by the Judge and Court Reporter that they would be.

6.  During the testimony of Nathan Angel I specifically objected to the testimony as it related to the condition of the victim.  I cited a concern that the 911 tape and the speculation about whether or not the victim died during voir dire would make testimony about this issue run counter to the court's ruling and that it would be irrelevant and unfairly prejudicial under Evid.R. 403.

7.  There was a sidebar during the afternoon of the first day of trial where I pointed out for the Court that there was a juror who was asleep throughout most of the afternoon's proceedings.  It was brought to my attention by the Bailiff and the Court Reporter, who confirmed this to the Court.  At that time I did not make a request that she be removed and the

alternate seated.

8. Prior to Dr. Lehman's testimony I objected to the State calling him. I again cited that his testimony was irrelevant because there was a stipulation that an injury had occurred, and that the testimony of Mr. Angel and other witnesses made this clear. I moved to exclude it because it was not relevant, and that it would be highly prejudicial. I again stated it would be even more prejudicial in light of the above concerns that were raised on the first day. The Court overruled my objection. I made a continuing objection on the record that cited the same reasons.

9. Following the testimony of Dr. Lehman I moved for a mistrial. The grounds for this were the speculation in voir dire, the testimony of Mr. Angel and the 911 tape, and the testimony of Dr. Lehman. I argued that the cumulative nature of the evidence was so prejudicial as to deny Ms. Harris her right to a fair trial and moved for a mistrial. This was denied, and the request does not appear on the record.

10. Prior to the Court giving the final instructions to the jury and the jury deliberating I made a request to the Court to excuse the juror who had been sleeping the first day. The court denied the request without argument.

{¶ 13} The State submitted the following response to Harris's motion to complete the record:

1. The State agrees with points 1-7 raised in Defendant's proposed record.

2. The State agrees that Defendant objected to Dr. Lehman's testimony, however that objection was presented as a Motion in Limine. The objection was renewed at some point during the trial.

3. The State disagrees that Defendant moved for a mistrial at the close of Dr. Lehman's testimony. The State rested its case after Dr. Lehman, and the Court addressed any motions and objections outside the hearing of the jury. The transcript accurately reflects what was stated in open court at that time. No additional side bars were held at that point.

4. The State disagrees that the Defendant requested the Court excuse the juror who had been sleeping. Per the transcript, the Court gave the final jury instructions immediately after closing arguments. There was not a recess or any sidebar discussions that would not have been recorded.

{¶ 14} On June 25, 2012, the trial court issued a decision and entry completing the record. The trial court stated, in part:

In reviewing this matter, the Court has requested that the parties present their proposed record for appeal. The Court has also obtained a copy of the transcript from the original transcriptionist tasked with transcribing the record for appeal. The Court has also received copies of all relevant pleadings from counsel, since this Court's file had previously been forwarded to the Court of Appeals.

After reviewing the Defendant's Proposed Record for Appeal, the State, in its response, stipulated with paragraph 1 through 7 of the Defendant's

proposal. There being no dispute with regards to these proposed additions, the Court simply adopts those statements relevant to the completion of the record and restates, verbatim, those additions here.

        * * *

As to the remaining proposed additions to the record, the Court has thoroughly reviewed the record and the context of the proceedings and discussions taking place at the time of the events proposed by the Defendant and is unpersuaded by the Defendant's arguments. Therefore, paragraphs 8, 9 and 10, as proposed by the Defendant, are rejected as additions to the record.

{¶ 15} The parties and the trial court followed the procedures set forth in App.R. 9. Prior to issuing its decision on Harris's motion to complete the record, the trial court reviewed the memoranda and affidavits submitted by the parties, the original trial transcript, and the pleadings of the parties. After reviewing these materials, the trial court decided to supplement the record with some, but not all, of the information that Harris submitted in her motion. Based on our review of the record before us, we find no error in the trial court's decision on Harris's motion to complete the record.

{¶ 16} Furthermore, even if we were to find that the trial court should have supplemented the record with the additional material contained in paragraphs eight through ten of Shawn Hooks's affidavit, we conclude that the outcome of this appeal would not be affected. The allegedly missing information identified by Harris in paragraphs eight through ten of the affidavit includes an oral motion for a mistrial – based on the testimony of a physician who testified to the extent of the victim's injuries, and a request at the end of the

trial to remove a juror who had been allegedly sleeping on the first day of trial. As explained in our resolution of Harris's Third and Fifth Assignments of Error, below, the trial court did not abuse its discretion when it allowed evidence of injury to be submitted to the jury or when it allowed the sleeping juror to remain on the jury. Consequently, Harris has failed to demonstrate prejudice resulting from the trial court's decision not to supplement the record with the material contained in paragraphs eight through ten of Shawn Hook's affidavit; assuming the truth of those averments, they do not demonstrate error requiring reversal of the judgment.

{¶ 17} The First Assignment of Error is overruled.

### IV. The Trial Court Erred in Denying Harris her Right of Allocution

{¶ 18} Harris's Second Assignment of Error states:

THE TRIAL COURT ERRED IN NOT PERMITTING APPELLANT TO SPEAK IN HER OWN BEHALF DURING SENTENCING.

{¶ 19} "The plain language of Crim.R. 32(A)(1) imposes a mandatory duty upon the trial court to unambiguously address the defendant and provide him or her with the opportunity to speak before sentencing." *State v. Collier*, 2d Dist. Clark Nos. 2006 CA 102, 2006 CA 104, 2007-Ohio-6349, ¶ 92 (Citation omitted.) The defendant's right to allocution applies equally to both felony and misdemeanor convictions. *Id.* (Citation omitted.)

{¶ 20} The transcript from the trial establishes, and the State concedes, that the trial court failed to ask Harris if she wished to exercise her right to allocution prior to sentencing. "In a case in which the trial court has imposed sentence without first asking the defendant

whether he or she wishes to exercise the right of allocution created by Crim.R. 32(A), resentencing is required unless the error is invited error or harmless error." *State v. Campbell*, 90 Ohio St.3d 320, 738 N.E.2d 1178 (2000). Moreover, the doctrine of waiver is inapplicable to this type of error when the trial court does not ask the defendant if she wishes to allocute. *Id.* at 324-325.

{¶ 21} Harris's Second Assignment of Error is sustained.

## V. The Trial Court Did Not Abuse its Discretion When
## it Failed to Remove a Sleeping Juror

{¶ 22} Harris's Third Assignment of Error states:

APPELLANT WAS DENIED HER CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL WHEN THE COURT FAILED TO REMOVE A JUROR WHO SLEPT THROUGH A SIGNIFICANT PORTION OF THE TRIAL.

{¶ 23} It is undisputed that at some point during the first day of trial a juror either nodded off or fell asleep. The bailiff and court reporter brought this fact to the attention of Harris's trial counsel, who then alerted the trial court. The trial court admonished the juror to pay attention, but did not remove the juror from the jury. At that time, neither party objected to the trial court's decision to allow the juror to remain on the jury. Harris contends that the trial court abused its discretion by failing to remove the juror. We do not agree.

{¶ 24} The trial court has broad discretion in handling a situation in which a juror has fallen asleep during testimony. *State v. Sanders*, 92 Ohio St.3d 245, 253, 750 N.E.2d 90 (2001).

{¶ 25}   Paragraphs seven and ten of the affidavit submitted with Harris's motion to complete the record concerned the juror who was sleeping.   Those paragraphs state:

7.   There was a sidebar during the afternoon of the first day of trial where I pointed out for the Court that there was a juror who was asleep throughout most of the afternoon's proceedings.   It was brought to my attention by the Bailiff and the Court Reporter, who confirmed this to the Court.   At that time I did not make a request that she be removed and the alternate seated.

10.   Prior to the Court giving the final instructions to the jury and the jury deliberating I made a request to the Court to excuse the juror who had been sleeping the first day.   The court denied the request without argument.

{¶ 26}   As discussed in our disposition of Harris's First Assignment of Error above, the trial court accepted paragraph seven but rejected paragraph ten of the affidavit.   Even if we accept both paragraphs as true, however, at best it establishes that Harris waited until the completion of the trial to request that the sleeping juror be removed.   The time to request the removal of the juror was at the time that the trial court was made aware of the alleged juror misconduct and admonished the juror.   Instead, Harris's counsel either failed to request the removal of the juror at all or waited to request the removal of the juror until immediately before jury deliberations.   Under either scenario, we find no abuse of discretion.

{¶ 27}   At worst, Harris acquiesced in the remedy fashioned by the trial court – admonition of the sleeping juror – and did not request the stronger remedy of removal of the juror until after closing arguments.   In our view, this request came too late.   A party should not be able to wait until a case is about to be submitted to a jury before deciding whether to

request a substitution of a juror, since that would allow the party to evaluate the desirability of keeping that juror, based on the juror's facial expressions, body language or other indications concerning that juror that manifest themselves after the ground for the juror's removal arises.

**{¶ 28}** The Third Assignment of Error is overruled.

### VI. Harris's Conviction Is Not Against the Manifest Weight of the Evidence

**{¶ 29}** Harris's Fourth Assignment of Error states:

APPELLANT'S CONVICTION FOR LEAVING THE SCENE OF THE ACCIDENT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶ 30}** When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶ 31}** Harris was charged with a violation of R.C. 4549.021, which provides, in part:

(A) In case of accident or collision resulting in injury or damage to persons or property upon any public or private property other than public roads or highways, due to the driving or operation thereon of any motor vehicle, the

person driving or operating the motor vehicle, having knowledge of the accident or collision, shall stop, and, upon request of the person injured or damaged, or any other person, shall give that person the driver's or operator's name and address * * * .

{¶ 32} Harris concedes that she did not, ultimately, contest at trial that it was her vehicle that struck the high school student. Brief, p. 13. Her defense was that she did not have knowledge of the accident at the time that it occurred. According to Harris, the sun was directly in her eyes when her vehicle struck the high school student. She contends that her actions immediately after the accident were consistent with a lack of awareness that she had struck a person with her vehicle.

{¶ 33} Harris testified at her trial, and presented her defense that she was not aware that she had struck a person. Witnesses to the accident and the police officer who investigated the accident also testified at trial. The jury presumably did not find Harris's testimony credible, but found that she had knowledge of the accident at the time that it occurred. In *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997), we observed:

> Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who

has seen and heard the witness. This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict.

**{¶ 34}** Based on the evidence in the record, we do not find that this is the rare case where the jury lost its way, resulting in a manifest miscarriage of justice. Harris's Fourth Assignment of Error is overruled.

**VII. The Trial Court Did Not Abuse Its Discretion By Allowing Evidence of Injury**

**{¶ 35}** Harris's Fifth Assignment of Error states:

THE TRIAL COURT ERRED IN PERMITTING IRRELEVANT AND UNDULY PREJUDICIAL EVIDENCE AS TO INJURIES SUSTAINED.

**{¶ 36}** Decisions regarding the admissibility of evidence at trial are within the broad discretion of the trial court and will be upheld absent an abuse of discretion and material prejudice. *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 86; *State v. Haines*, 112 Ohio St.3d 393, 2006-Ohio-6711, 860 N.E.2d 91, ¶ 50.

**{¶ 37}** Harris contends that the trial court abused its discretion by allowing the introduction into evidence of photographs of blood spatters, the testimony of Nathan Angel, who testified that the victim was motionless on the ground, breathing sporadically and occasionally making jerking motions, and the testimony of Dr. Lehman, who testified as to the severity of the victim's injuries. Harris argues that the trial court erred in allowing evidence of the injury sustained by the victim because this evidence is irrelevant to the crime with which she was charged. Harris further contends that even if the evidence of injury was

relevant, the "evidence of injury to a minor could very well inflame a jury and cause them to convict where they might not otherwise have done so." Brief, p. 17. We are not persuaded.

{¶ 38} Relevant evidence is generally admissible. Evid.R. 402. "Relevant evidence" is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. Harris was charged with a violation of R.C. 4549.021. This section requires the State to prove that Harris was involved in an accident or collision that resulted "in injury or damage to persons or property[.]" R.C. 4549.021(A). Consequently, evidence of injury is relevant to the charge brought against Harris. [1] Furthermore, evidence of the extent of the injuries to the victim and the photographs of blood spots on Harris's vehicle are relevant to whether Harris had knowledge at the time of the accident that she had hit a person with her vehicle, because that evidence is probative of the factual proposition that she hit a person with such force that she was bound to know that she had struck a person with sufficient force to cause injury, in contradistinction to a glancing collision with the limb of a downed tree, for example.

{¶ 39} The fact that evidence of injury is relevant, however, does not end our inquiry. According to Evid.R. 403(A), relevant evidence "is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." The Rule "manifests a definite bias in favor of the admission of relevant evidence, as the dangers associated with the potentially inflammatory nature of the

---

[1] Harris contends that the evidence of injury is irrelevant because she was charged with the misdemeanor version of R.C. 4549.02, which does not require proof of injury. But the record reflects that Harris was charged with the misdemeanor version of R.C. 4549.021, which does require proof of injury.

evidence must substantially outweigh its probative value before the court should reject its admission." *State v. White*, 4th Dist. Scioto No. 03CA 2926, 2004-Ohio-6005, ¶ 50. For that reason, "[w]hen determining whether the relevance of evidence is outweighed by its prejudicial effects, the evidence is viewed in a light most favorable to the proponent, maximizing its probative value and minimizing any prejudicial effect to the party opposing admission." *State v. Lakes*, 2d Dist. Montgomery No. 21490, 2007-Ohio-325, ¶ 22, citing *State v. Frazier*, 73 Ohio St.3d 323, 333, 652 N.E.2d 1000 (1995) and *State v. Durr*, 58 Ohio St.3d 86, 92, 568 N.E.2d 674 (1991).

**{¶ 40}** According to Harris, the trial court abused its discretion by allowing the jury to see photographs of blood spatters and to hear the testimony of Nathan Angel and Dr. Lehman. We have reviewed the photographs and the testimony of record. We conclude that the trial court could reasonably find that the probative value of this evidence is not *substantially* outweighed by the danger of unfair prejudice. Evid.R. 403(A). Consequently, we conclude that the trial court did not abuse its discretion in allowing the admission of this evidence. In reaching this conclusion, we are mindful that the trial court did prohibit the State from offering evidence that the victim's injuries were fatal.

**{¶ 41}** Harris's Fifth Assignment of Error is overruled.

## VII. Conclusion

**{¶ 42}** Harris's Second Assignment of Error having been sustained, and her other assignments of error having been overruled, the sentence is Reversed; the judgment of the trial court is Affirmed in all other respects; and this cause is Remanded for re-sentencing consistent

with this opinion.

. . . . . . . . . . . . .

FROELICH and HALL, JJ., concur.

Copies mailed to:

John Danish
Stephanie Cook
Shauna Hill
Cheryl L. Collins
Hon. Christopher D. Roberts