[Cite as *State v. Wayne*, 2013-Ohio-5060.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY   COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 25243 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2011-CR-3424 |
| v. | : | |
| | : | |
| KEITH O. WAYNE | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

· · · · · · · · · ·

O P I N I O N

Rendered on the 15th day of November, 2013.

· · · · · · · · · ·

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. #0069384, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

LUCAS W. WILDER, Atty. Reg. #0074057, 120 West Second Street, Suite 400, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

· · · · · · · · · · · ·

HALL, J.,

{¶ 1}    Keith O. Wayne appeals from his conviction and sentence on charges of rape and

gross sexual imposition.

{¶ 2}    Wayne advances six assignments of error on appeal. First, he challenges the legal sufficiency and manifest weight of the evidence to support his convictions. Second, he contends the trial court erred in denying his motion for a continuance of trial to secure the attendance of witnesses. Third, he claims the trial court erred in admitting two photographs into evidence. Fourth, he asserts that the jury returned impermissibly inconsistent verdicts. Fifth, he alleges ineffective assistance of trial counsel. Sixth, he maintains that the trial court erred in allowing evidence of the victim's sexual orientation.

{¶ 3}    The record reflects that Wayne was convicted of the charges set forth above based primarily on the testimony of the victim, A.J., who was seventeen years old at the time of the incident in question. A.J. testified at trial that she was babysitting her sister's two young children at her sister's apartment on October 3, 2011. After one of the children fell asleep, she took the other child, her three-year-old nephew, into an interior hallway outside the apartment door. While there, she saw Wayne and his friend, Kevin Brown, enter the hallway. A.J. knew both men, and she began talking to them. A.J. eventually took her nephew to Wayne's apartment, which was one floor below her sister's apartment. After Brown left, Wayne sat next to A.J. on a couch and attempted to become romantic. When Wayne tried to "suck on [A.J.'s] neck," she got up and returned to her sister's apartment with her nephew. Wayne later knocked on A.J.'s door after she put her nephew to bed. She opened the door and agreed to go back downstairs with him.

{¶ 4}    Once inside Wayne's apartment, A.J. looked at his new clothes, shoes, and jewelry. At one point, Wayne announced that he was having trouble with his girlfriend. He offered A.J. a drink and asked whether anyone would mind if they found out he was trying to talk to her. A.J. "didn't know what to think." She responded by telling Wayne she was attracted to

females and decided to leave. A.J. testified that Wayne forcibly stopped her from doing so. According to A.J., he also placed his hand inside her pajama pants and touched her vagina despite her pleas for him to stop. He then forced her into his bedroom where he pushed her down and had sex with her from behind. A.J. testified that Wayne then turned her around and had sex with her from the front. A.J. objected throughout the incident and repeatedly asked him to stop. After Wayne finished, A.J. pulled her pants up and returned to her sister's apartment. She sat crying and waited for her sister to get home. When her sister arrived, A.J. stated that Wayne had raped her. The following morning, A.J.'s sister reported the incident to the police. A.J. then went to the hospital for an examination. A.J.'s sister testified for the State but had no first-hand knowledge about the incident.

{¶ 5} Detective Theresa Lawson was the third prosecution witness. She testified about interviewing A.J. at the hospital and then visiting Wayne's apartment to take photographs. The final prosecution witness was Cathleen Hackett, a registered nurse. Hackett testified about performing a sexual-assault examination. Hackett noted some bruising on A.J.'s labia and cervix. Hackett testified that such bruising was common with forcible penetration.

{¶ 6} After the State rested its case, defense counsel sought a continuance to locate three witnesses who had not been subpoenaed and whose whereabouts remained unknown. The trial court denied the motion, and the defense rested without presenting any evidence. The jury found Wayne guilty on two counts of rape and one count of gross sexual imposition. It acquitted him on one count of kidnapping. The trial court merged the rape convictions as allied offenses of similar import. It then imposed concurrent prison terms totaling nine years. This appeal followed.

{¶ 7} In his first assignment of error, Wayne challenges the legal sufficiency and

manifest weight of the evidence to sustain his convictions. In support, he questions the credibility of A.J.'s testimony. He argues that she admitted several "inconsistencies" or "lies" at trial. He also suggests that any sexual activity was consensual and that the State presented no evidence of force being used.

{¶ 8}    When a defendant challenges the sufficiency of the evidence, he is arguing that the State presented inadequate evidence on an element of the offense to sustain the verdict as a matter of law. *State v. Hawn*, 138 Ohio App.3d 449, 471, 741 N.E.2d 594 (2d Dist.2000). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 9}    Our analysis is different when reviewing a manifest-weight argument. When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the

conviction." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 10} With the foregoing standards in mind, we conclude that Wayne's convictions are supported by legally sufficient evidence. The gross sexual imposition conviction is supported by A.J.'s testimony that Wayne prevented her from leaving his apartment and forcibly placed his hand down her pants. The rape conviction is supported by A.J.'s testimony that Wayne forcibly engaged in sexual intercourse with her despite her pleas for him to stop. A.J.'s testimony, if believed, is legally sufficient to support Wayne's convictions.

{¶ 11} The convictions also are not against the weight of the evidence. As for A.J.'s credibility, we give substantial deference to a jury's decision whether, and to what extent, to believe a witness. *State v. Harris*, 2d Dist. Montgomery No. 23915, 2013-Ohio-716, ¶33. "'This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict.'" *Id.*, quoting *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997).

{¶ 12} Here it is not patently apparent that the jury lost its way in finding Wayne guilty. The primary discrepancy he raises is whether A.J.'s three-year-old nephew accompanied her to his apartment. As set forth above, she took her nephew with her the first time she visited his apartment. She then put him to bed before returning the second time. A.J. initially told investigators and others that her nephew was with her the second time when she was raped. Wayne asserts that A.J. lied about this fact. The State contends she was confused and mistaken. Either way, A.J. admitted the discrepancy, which the jury was free to take into consideration when evaluating her credibility. On cross examination, defense counsel also attempted to point

out other minor discrepancies in A.J.'s statements. The jury was free to consider those issues too when evaluating her accusations. Despite the alleged discrepancies, the jury had the discretion to credit A.J.'s testimony that Wayne grabbed her, restrained her, pushed her down, and engaged in forcible sexual activity with her. This is not the exceptional case where the evidence weighs heavily against Wayne's convictions. The first assignment of error is overruled.

{¶ 13} In his second assignment of error, Wayne contends the trial court erred in denying his motion for a continuance to secure the attendance of three witnesses. The record reflects that defense counsel made the request after the State rested its case. Two of the three witnesses appeared on Wayne's witness list. The third did not. None of them had been subpoenaed, and their whereabouts remained unknown. Neither Wayne nor his attorney had spoken to the witnesses on the witness list. Defense counsel proffered that they were residents of the apartment building and would testify about the absence of loud noise or music coming from Wayne's apartment. The third witness, who was not disclosed on the witness list, purportedly would testify "that he knew [A.J.] was lying about the allegations that have been made against [Wayne]." (Trial Tr. Vol. II at 333-335).

{¶ 14} In denying the motion for a continuance, the trial court explained:

The Court is sort of disheartened here [by] the fact that we're in the second day of trial and we are asking for a continuance. In regards to the last witness, the Court finds that there was no notice pursuant to the local rules or Rule 16 of the rules of criminal procedure to [the] identity [of] that witness. And therefore the Court would not allow any continuance based upon that for that witness. From what I understand the other two witnesses would testify that there may or may not

have been noise coming from the Defendant's apartment on this date and time * * *.

    * * * I do not feel that your motion to continue the trial is warranted and the Court is going to overrule it. Obviously you have some time right now if you can locate these witnesses and bring them forth, at least the first two, I certainly would entertain if they're here. But we're going to start the trial at one p.m. and go forward. I feel that you had adequate time to contact these individuals, to get them under subpoena. And this trial has been set. You've known about the trial date. Defendant has known about the trial date. And it appears that you've made some effort to find them. But I'm not going to, you know, hold up the trial because of that. This matter should have been brought to the Court's attention if there was problems in locating witnesses and getting them here. If this matter was brought to the Court's attention earlier, then we might have done something to assist and had some investigator track them down or the police track them down, or do something, [to] assist in getting them here. But at this late date and without notification to the Court that's not going to be feasible. And also the Court is looking at the nature of their testimony as well in regards to this case. So base—for all these reasons I'm going to overrule your motion * * *.

(Trial Tr. Vol. II at 336-337).

{¶ 15}   A trial court has broad discretion to grant or deny a continuance. *State v. Bocock*, 2d Dist. Montgomery No. 22481, 2008-Ohio-5641, ¶22. Factors a trial court should consider include "'the length of the delay requested; whether other continuances have been requested and

received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which give [sic] rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case.'" *Id.* at ¶23, quoting *State v. Maxwell*, 2d Dist. Montgomery No. 13966, 1993 WL 393835 (Oct. 7, 1993).

{¶ 16}  Here the trial court did not abuse its discretion in denying a continuance. Wayne's failure to disclose the first witness justified denying a continuance to locate that person. With regard to the other two witnesses, the fact that Wayne waited until the close of the State's case to seek a continuance was dilatory. At that point, a continuance would have inconvenienced the State, the trial court, and the jury. We note too that the witnesses had not been subpoenaed, and their whereabouts remained unknown. These facts also support the trial court's denial of a continuance. The second assignment of error is overruled.

{¶ 17}  In his third assignment of error, Wayne claims the trial court erred in admitting two photographs into evidence. Specifically, he challenges the admission, over objection, of photographs depicting bruises to A.J.'s labia and cervix. Wayne contends the probative value of the photographs was substantially outweighed by the danger of unfair prejudice because they added nothing to nurse Hackett's testimony and were inflammatory.

{¶ 18}  We review a trial court's admission of photographs for an abuse of discretion. *State v. Lockhart*, 2d Dist. Montgomery No. 15955, 1998 WL 12680, *5 (Jan. 16, 1998). We see no abuse of discretion here. "Photographs of a victim's injuries are relevant and almost always admissible in an assault case." *State v. Root*, 2d Dist. Montgomery No. 20366, 2005-Ohio-448, ¶17. The photographs Wayne challenges were neither numerous nor particularly inflammatory. In

addition, they illustrated and corroborated Hackett's testimony about the injuries A.J. sustained due to a sexual assault. The trial court acted within its discretion in admitting the photographs. The third assignment of error is overruled.

{¶ 19} In his fourth assignment of error, Wayne asserts that the jury returned inconsistent verdicts. He contends his acquittal on the kidnapping charge is inconsistent with his conviction on the rape and gross sexual imposition charges. In particular, Wayne questions how the jury could have found that he engaged in sexual activity by force for purposes of rape and gross sexual imposition if the State did not prove restraint for purposes of kidnapping.

{¶ 20} Upon review, we find Wayne's argument to be unpersuasive. Even if the rape and gross sexual imposition convictions logically were inconsistent with the kidnapping acquittal—an issue we need not decide—that would not warrant reversal of the convictions. Inconsistent responses to different counts in an indictment will not render a conviction invalid. *State v. Carver*, 2d Dist. Montgomery No. 21328, 2006-Ohio-5798, ¶6 (finding no impermissible inconsistency where the jury convicted the appellant of kidnapping but acquitted him of rape); *State v. Hawkins*, 2d Dist. Montgomery No. 21691, 2007-Ohio-2979, ¶23 (recognizing that each count of an indictment is independent and that a verdict as to one count is independent of, and unaffected by, the verdict on other counts). The fourth assignment of error is overruled.

{¶ 21} In his fifth assignment of error, Wayne alleges ineffective assistance of trial counsel. Specifically, he claims his attorney failed to subpoena the three witnesses mentioned above and pressured him not to testify.

{¶ 22} To prevail on his ineffective-assistance claim, Wayne must show that his attorney's performance was deficient and that the deficient performance prejudiced him.

*Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Prejudice exists where "there is a reasonable probability that, but for counsel's deficient performance, the outcome would have been different." *Id.* at 694. On the record before us, Wayne has not made the required showing.

{¶ 23}   With regard to the subpoena issue, the record reflects that defense counsel had unsuccessfully looked for the witnesses. Because their whereabouts were unknown, defense counsel could not subpoena them. (Trial Tr. Vol. II at 330-335). Moreover, as explained above, one of the witnesses, the victim's brother, had not been disclosed. With or without a subpoena, the trial court would have been correct if that witness was excluded. Moreover, the defendant apparently had told his trial counsel that the victim's brother had previously been in jail with the defendant and the brother had disclosed to the defendant "he knew [his sister] was lying." That statement, by itself, would have been inadmissible. In regard to the other two witnesses, defense counsel's proffer was that at the time of the offense, those witnesses lived in other apartments in they building and, purportedly, they would have said that they did not hear loud music or notice unusual activity on the night in question.  Defense counsel actually had no idea what these witnesses would say, however, because he had been unable to contact them. The victim had testified that the music in Wayne's apartment was "loud" (Trial Tr. Vol. I at 166 & 177), but there was no testimony about how loud or whether it could be heard outside the apartment. From the victim's remaining testimony it was apparent the persons present in Wayne's apartment could hear each other speak.  Even assuming, arguendo, that the other two witnesses had been home and had not heard any noise or noticed any commotion, we find the record fails to support any reasonable probability that such testimony would have altered the outcome below.

{¶ 24}   As for defense counsel pressuring Wayne not to testify, the record does not support the claim. At trial, Wayne acknowledged that it was his decision not to testify. (Trial Tr. Vol. II at 338). He did not mention being pressured by his attorney. Absent any evidence to support Wayne's claim, we find no ineffective assistance of counsel. The fifth assignment of error is overruled.

{¶ 25}   In his sixth assignment of error, Wayne contends the trial court erred in allowing evidence of A.J.'s sexual orientation. This argument concerns A.J.'s own testimony that she is attracted to females and that she told Wayne so before he raped her. (Trial Tr. Vol. I at 158, 173). The State apparently elicited this testimony to help negate any argument that the sexual activity was consensual.

{¶ 26}   Wayne argues that A.J.'s testimony about being attracted to females violated Ohio's rape-shield statute.[1] We disagree. With some exceptions, the statute precludes evidence of the victim's sexual activity. *See* R.C. 2907.02(D). The statute says nothing about evidence of the victim's attraction to members of a particular gender being inadmissible. Therefore, we conclude that A.J.'s testimony about being attracted to females did not violate the rape-shield

---

[1] We find it questionable whether Wayne properly preserved an objection to A.J.'s testimony about being attracted to females. During a morning recess before opening statements, defense counsel cited the rape-shield statute and moved to prevent the State from introducing evidence of A.J.'s "sexual activity" or "reputation as to sexual activity." (Trial Tr. Vol. I at 144-145). The State responded that it intended to present evidence of her sexual orientation, not any sexual activity. The trial court overruled defense counsel's motion and stated that it would allow the testimony. (*Id.*). When A.J. later testified about being attracted to females, Wayne did not object. (*Id.* at 158, 173). A motion made before opening statements regarding the admissibility of evidence is a motion in limine. *State v. Wilson*, 2d Dist. Montgomery No. 24577, 2012-Ohio-3098, ¶46-48. The denial of such a motion generally may not be challenged on appeal. An objection must be made during trial when the evidentiary issue arises. *State v. Brown*, 38 Ohio St.3d 305, 311-312, 528 N.E.2d 523 (1988). Here we need not decide whether Wayne waived all but plain error by not objecting to A.J.'s trial testimony about her attraction to females. Based on the reasoning set forth above, the trial court's admission of that testimony did not violate the rape-shield statute. Therefore, we find no error at all, plain or otherwise.

statute. *Cf. State v. Barnes*, 10th Dist. Franklin No. 04AP-1133, 2005-Ohio-3279, ¶30 (finding that testimony about the victim having a boyfriend and dating him was not subject to exclusion under the rape-shield statute); *In re Johnson*, 61 Ohio App.3d 544, 550-551, 573 N.E.2d 184 (8th Dist.1989) (holding that evidence of the victim's sexual attraction to the defendant was not subject to exclusion under the rape-shield statute because sexual desires and attraction do not constitute sexual activity).

{¶ 27} In opposition to our conclusion, Wayne cites only Colorado case law. In the lead case upon which he relies, *People v. Murphy*, 919 P.2d 191 (Colo.1996), the Colorado Supreme Court held that Colorado's rape-shield statute, which generally bars evidence of a victim's "sexual conduct," also precludes evidence of a victim's "sexual orientation." In support of its decision, the *Murphy* court reasoned: "Evidence of past sexual conduct is closely related to evidence of sexual orientation. We therefore conclude, as did the court of appeals, that the Rape Shield Statute's prohibition against evidence of a rape victim's past sexual conduct also precludes evidence of sexual orientation." *Id*. at 195.

{¶ 28} Upon review, we decline to adopt the Colorado Supreme Court's reasoning. Reading "sexual conduct" to mean "sexual orientation" requires judicial rewriting of an unambiguous statute. Ohio law expressly defines sexual conduct. It means "vaginal intercourse between a male and a female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, or other object into the vaginal or anal opening of another." R.C. 2907.01(A). A.J.'s testimony that she is attracted to females is not evidence of "sexual conduct."

Therefore, the rape-shield statute was inapplicable to her testimony.[2] The sixth assignment of error is overruled.

{¶ 29}  The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

WELBAUM, J., concurs.

FROELICH, J., concurring:

{¶ 30}  I agree that the rape shield statute was not applicable to A.J.'s testimony, but write briefly to indicate that evidence of sexual orientation could be shielded in other situations.

{¶ 31}  The only testimony in this case about sexual orientation was:

Q.  This may sound a little bit of an odd question, but, [complainant], are you romantically attracted to men or women?

A.  Females.

Q.  How long have you known that?

A.  Since ninth grade.

Q.  In fact, you currently have a girlfriend?

A.  Yes, sir.

Q.  How long have you been with her?

A.  Two years.

{¶ 32}  And at Tr. 173 in partial response to the prosecutor's question about what was happening with the defendant:

---

[2] In light of this determination, we need not address the State's argument that the rape-shield statute was not violated because A.J. herself presented the challenged testimony about her sexual orientation.

A.  . . . I wasn't recall you trying to come on to me or anything.  I'm - - I like females."

{¶ 33}    Rape shield laws were enacted in part to prevent an inference that a person with an "unchaste character" is more likely to have consented to sexual conduct.  *See, e.g., Nicolas*, "They say he's gay," The Admissibility of Evidence of Sexual Orientation, 37 Georgia Law Review 793 (Spring 2003).   For example, a defense attorney should not be able to ask a witness whether she is "romantically attracted" to men to create an inference that the complainant was more likely to have consented.

{¶ 34}    Here, the State asked questions of the complainant and made an argument in order explicitly to infer that she was less likely to have consented to sexual conduct with the defendant.   Another concern is that the prosecutor could "open" the door to cross-examination of the complainant about her sexual history, thus defeating the goal of keeping the trial about whether there was force between these people on this day.

{¶ 35}    From this very limited testimony, the prosecutor made the following rebuttal closing argument (Tr. 363):

"Now, hasn't ever been brought up much here, but exactly why is this girl going down to the apartment to have sex with a man when she's never had sex with men before?   Unrefuted testimony two years now she's been a lesbian. Defense has not touched this at all because he has no explanation why all of a sudden this girl decides I like girls, I like girls, you know what, I think I'll have sex with somebody I've only been over to his house once.   Does that sound reasonable."

**{¶ 36}** The prosecutor's conclusions and argument were not supported by the testimony of the 17-year-old that she is "romantically attracted" to females and currently had a girlfriend. However, there was no objection and defense counsel could have made a strategic decision not to draw attention to the comment. Similarly, defense counsel could have decided not to object to the initial questions since he knew from the motion in limine that the objection would be overruled and he did not want the jury to focus on this particular testimony.

**{¶ 37}** I would find that the testimony presented was irrelevant; however, there was no objection and there is no plain error.

. . . . . . . . . .

Copies mailed to:

Mathias H. Heck
Andrew T. French
Lucas W. Wilder
Hon. Dennis J. Adkins