[Cite as *State v. Wynn*, 2014-Ohio-621.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 25730 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2010-CR-3822/1 |
| v. | : | |
| | : | |
| ANTONIO WYNN | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 21st day of February, 2014.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by CARLEY J. INGRAM, Atty. Reg. #0020084, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

ANTONIO WYNN #657-874, Warren Correctional Institution, Post Office Box 120, Lebanon, Ohio 45036
        Defendant-Appellant, *pro se*

. . . . . . . . . . . . .

HALL, J.,

{¶ 1}     Antonio Wynn appeals pro se from the trial court's denial of his R.C. 2953.21 petition for post-conviction relief.

**{¶ 2}** In two related assignments of error, Wynn contends the trial court erred in denying his petition without a hearing where he presented evidence establishing ineffective assistance of trial counsel.

**{¶ 3}** The record reflects that a jury convicted Wynn of complicity to commit felony murder. At trial, the State presented evidence that Wynn assisted his friend and co-defendant George Turner in killing Deonta Beans. A video surveillance camera captured the murder, and eyewitnesses identified Turner as the person who shot Beans inside a convenience store. Prior to Wynn's trial, Turner pled guilty and agreed to testify for the State.

**{¶ 4}** At Wynn's trial, Turner testified that he previously had been robbed by Beans. Turner explained that Wynn had agreed to help him get even with Beans. According to Turner, he and Wynn saw Beans inside the convenience store. Turner then drove Wynn to Wynn's house. Wynn entered his house and retrieved a handgun, which he gave to Turner. The two men then returned to the convenience store where Beans remained inside. Before exiting the car, Wynn picked up a pair of gloves and handed the left glove to Turner, who was left handed, to keep gunshot residue off of his skin. Wynn, who was right handed, put on the right glove. According to Turner, he then racked the gun, placed it in his waistband, and followed Wynn into the store. Once inside, Wynn and Turner approached Beans. Wynn first punched Beans with his gloved hand. As Beans stumbled, Turner held the gun in his gloved left hand and pointed it at Beans' head. With his other hand, Turner tried to pin Beans' arms down. At the same time, Wynn punched Beans again. Turner then pulled the trigger and shot Beans in the neck. Wynn and Turner fled the store as Beans lost consciousness and later died.

**{¶ 5}** Based on the foregoing version of events, which the State's evidence supported, a jury found Wynn guilty of complicity to commit felony murder. The trial court sentenced him

accordingly. Thereafter, Wynn filed an unsuccessful direct appeal raising several issues. See *State v. Wynn*, 2d Dist. Montgomery No. 25097, 2014-Ohio-420. In our opinion affirming Wynn's conviction we noted that the offense was captured on surveillance video. We observed:

> [T]he evidence demonstrates that Wynn knowingly aided and abetted Turner in the murder. The video shows Wynn stepping in to punch Beans after Turner already had trained his gun on Beans. Turner was also struggling to get the gun away from Beans when Wynn punched Beans for the second time. Accordingly, the video, combined with the testimony in this case, indicates that Wynn knowingly assisted Turner in committing the felonious assault that proximately resulted in Beans' death. Id. at ¶ 107.

{¶ 6} The matter is now before us in regard to Appellant's timely filed petition for post-conviction relief. He later filed an amended petition, which the trial court accepted. In both petitions, Wynn asserted ineffective assistance of trial counsel.

{¶ 7} In support of his petition, Wynn provided his own affidavit. He averred that a third person, known to him only as "Little E" or "Eric," was in Turner's car at the time of the shooting.[1] Wynn further averred that he did not retrieve the handgun from inside his house. Rather, he removed it from a hidden compartment inside Turner's car and gave the weapon to Turner without knowing why Turner wanted it. Wynn stated that he tried to talk Turner out of shooting Beans after he discovered Turner's intent. Wynn also averred that he entered the convenience store planning to start a fight with Beans and hoping the commotion would prevent

---

[1] In his amended petition, Wynn claims "Little E"'s full name is Eric Wright. (Doc. #6 at 1, fn.1). The record contains only petitioner's affidavit submitted at the time of the original petition which does not contain the last name.

Turner from shooting Beans. Wynn stated that he had no idea Turner would follow him into the store, and he did not think Turner would shoot Beans. Wynn averred that his trial counsel knew the foregoing information.

{¶ 8} Wynn also provided an affidavit from Angela Hall, his mother. Hall averred that she was home all day on the day of the shooting. She stated that Turner and another person came to her house around 6:30 a.m. and picked up Wynn. Hall averred that Wynn did not return home until that evening after the shooting. Police officers then arrived, and Hall told Wynn to cooperate with them. According to Hall, Wynn's trial counsel planned to call her as a witness but failed to do so.

{¶ 9} In addition to his own affidavit and his mother's affidavit, Wynn provided four identical affidavits from inmates at the Warren Correctional Institution. Each of these affidavits states:

> 1. I am acquainted with the Defendant in this case. He is known to me as "Tone." Until seeing him in the Warren Correctional Institution, I didn't know his full name, just as I didn't know that "George's" whole name is George Turner, and I still don't know Little E's name other than that his first name is Eric.
>
> 2. Prior to my incarceration, I lived in Dayton, Ohio, and I knew that Defendant and George hung together a lot. I also knew that Little E hung with George a lot. It was common knowledge to those who are familiar with these three that Little E looked up to George.

(Doc. #6 at affidavits).

{¶ 10} Also attached to Wynn's amended petition was a copy of a post-conviction letter

from his trial counsel. In the letter, which appears to respond to various concerns raised by Wynn, trial counsel stated: "In regard to investigators, you know that none were hired. Even if you had funds available to do so, there was no need." (*Id*. at Exh. A).

**{¶ 11}** On April 4, 2013, the trial court denied the petition without an evidentiary hearing. (Doc. #11). It reasoned that trial counsel could not be faulted for failing to produce a witness, "Little E," whose last name was unknown to Wynn. The trial court also found no reasonable probability that the jury would have reached a different result if it had heard the purported testimony from "Little E" and Wynn's mother. This appeal followed.

**{¶ 12}** "To prevail on a petition for post-conviction relief, the defendant must establish a violation of his constitutional rights which renders the judgment of conviction void or voidable." *State v. Simons*, 2d Dist. Champaign No. 2013 CA 5, 2013-Ohio-3654, ¶ 11. When a petition alleges ineffective assistance of trial counsel, "'the petitioner bears the initial burden to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and that the defense was prejudiced by counsel's ineffectiveness.'" *State v. Kapper*, 5 Ohio St.3d 36, 38, 448 N .E.2d 823 (1983), quoting *State v. Jackson*, 64 Ohio St.2d 107, 413 N.E.2d 819 (1980). A trial court may deny a petition without a hearing "where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that petitioner set forth sufficient operative facts to establish substantive grounds for relief." *State v. Calhoun*, 86 Ohio St.3d 279, 714 N.E.2d 905 (1999), paragraph two of the syllabus. We review a trial court's denial of post-conviction relief for an abuse of discretion. *Simons* at ¶ 13.

**{¶ 13}** With the foregoing standards in mind, we turn to Wynn's appeal. Relying on the evidentiary materials attached to his initial and amended petitions, Wynn first contends his trial

counsel rendered ineffective assistance by "failing to conduct any investigation" to identify and locate "Little E." We disagree for several reasons. First, the trial court did not abuse its discretion in characterizing Wynn's claim that his attorney could have found "Little E" as speculative or in finding no deficient representation in counsel's failure to locate him. Second, Wynn failed to provide an affidavit from "Little E." Without such an affidavit, we do not know what his testimony would have been if he had been called as a witness. *Cf. Simons* at ¶ 20; *State v. Cochran*, 10th Dist. Franklin No. 12AP-73, 2012-Ohio-4077, ¶ 16. Third, Wynn does not even claim "Little E" saw what happened inside the convenience store, where the State's evidence established that Wynn aided and abetted Turner by punching Beans as Turner brandished a firearm. For these reasons, the record fails to support a finding that "Little E's" absence prejudiced Wynn even if we assume, arguendo, that counsel's failure to locate "Little E" did constitute deficient representation.

{¶ 14} With regard to Wynn's claim that his attorney failed to conduct any investigation, the record reveals otherwise. The letter from counsel upon which Wynn relies states only that no investigator was hired, not that counsel conducted no investigation. As the State correctly notes, Wynn's trial counsel appears to have performed competently. He took discovery, pursued a lengthy motion to suppress with a hearing, filed a list of potential witnesses, interviewed Wynn's co-defendant, and engaged in cross-examination at trial that demonstrated a thorough understanding of the facts and a plan to exploit them to Wynn's advantage.

{¶ 15} As for the affidavit from Wynn's mother, it fails to demonstrate substantive grounds for relief. Angela Hall averred that Wynn left her house in the morning and, because she was home all day with the doors locked, she knew Wynn did not return until after the shooting of

Beans. This statement admittedly conflicts with trial testimony that Wynn assisted Turner by retrieving a handgun from Wynn's house and giving it to Turner, but there was also questioning about Turner's prior statement where Turner told the police that he kept the gun in his car. Nevertheless, defense counsel's failure to call Hall as a witness did not prejudice Wynn. In the context of an ineffective-assistance claim, prejudice exists where "there is a reasonable probability that, but for counsel's deficient performance, the outcome would have been different." *State v. Wayne*, 2d Dist. Montgomery No. 25243, 2013-Ohio-5060, ¶ 22. We find no such reasonable probability here. Even if we accept Hall's claim that Wynn did not assist Turner by retrieving a handgun from his house, nothing in her affidavit controverts the State's evidence that Wynn also assisted Turner by (1) giving him a glove for his shooting hand, (2) entering the store with Turner and punching Beans, and (3) punching Beans a second time while Turner held a gun on Beans and the two men struggled. In short, the State's evidence, including a video recording and eyewitness testimony, established that Wynn knowingly aided and abetted Turner when the shooting occurred. This remains true even if we accept Wynn's claim that he retrieved the handgun from Turner's car rather than from his own house. "George awakened me and told me to give him his gun. I reached under the carpet where there was a hidden compartment, and I gave him the gun* * * *" Affidavit of Antonio Wynn filed with the "Post-Conviction Petition."

{¶ 16} Wynn also complains that his trial counsel filed "pro forma pre-trial motions." In support, he references only a motion to suppress and various transcript pages. This issue could have been raised on direct appeal because Wynn does not rely on any evidence outside the record. Therefore, res judicata precludes him from raising it in a post-conviction proceeding. *State v. Reynolds*, 79 Ohio St.3d 158, 161, 679 N.E.2d 1131 (1997). In addition, Wynn's

post-conviction petitions do not even appear to address this issue. In his amended petition, he raised an issue regarding an alleged lack of *Miranda* warnings. (Doc. #6 at 2). But that is not the basis for Wynn's appellate argument challenging his counsel's handling of the suppression motion.

**{¶ 17}** Finally, Wynn takes issue with the State's failure to respond to his post-conviction relief petition below. He suggests that the lack of a response below may mean no final, appealable order exists and that the State is precluded from filing a brief on appeal. Wynn is mistaken. "Although R.C. 2953.21(D) allows the State to respond to a petition for post-conviction relief within ten days after docketing, * * * it is well settled that the State is not required to respond." *State v. Hazel*, 2d Dist. Clark Nos. 2011-CA-101, 2012-CA-22, 2013-Ohio-118, ¶ 5.

**{¶ 18}** For the foregoing reasons, we overrule Wynn's assignments of error and affirm the judgment of the Montgomery County Common Pleas Court.

. . . . . . . . . . . . .

FAIN, J., and WELBAUM, J., concur.

Copies mailed to:

Mathias H. Heck
Carley J. Ingram
Antonio Wynn
Hon. Frances E. McGee